IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEROY CRAWFORD                                                            PLAINTIFF

                v.                          Civil No. 06-2003

SGT. TERRY REA;
NURSE CHARLES WALLS;
AND LT. CUPP                                                  DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

      Leroy Crawford filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 on January 9, 2006. He proceeds pro se and in forma pauperis (IFP).

      Plaintiff contends his constitutional rights were violated while he was incarcerated at the Crawford County Detention Center when he was denied adequate medical and dental care. On July 31, 2006, defendants filed a summary judgment motion (Doc. 21). Defendants maintain the plaintiff cannot prove that they were deliberately indifferent to his serious medical or dental needs.

      On December 6, 2006, an order was entered (Doc. 24) directing Crawford to complete, sign and return an attached questionnaire that would serve as his response to the summary judgment motion. The plaintiff's response to the questionnaire was filed on February 7, 2007 (Doc. 28). The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

## BACKGROUND

Crawford was arrested on October 6, 2005, and booked into the Crawford County Detention Center (CCDC). *Plaintiff's Response* (Doc. 28)(hereinafter *Resp.*) at ¶ 1. He was awaiting trial on pending criminal charges. *Id.* at ¶ 2. On December 24, 2005, he was convicted and sentenced. *Id.* at ¶ 4. He remained incarcerated at the CCDC until January 9, 2006. *Id.* at ¶ 3.

Charles Walls is the jail nurse at the CCDC. *Id.* at ¶ 5. Walls was the jail nurse during Crawford's incarceration at the CCDC. *Id.* at ¶ 6.

According to Walls, on October 12, 2005, he saw Crawford who was complaining of diabetes, kidney, a swollen side and problems with his knee. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) D at ¶ 2. Walls indicates he placed Crawford on an 1800 calorie a day diet and ordered Ibuprofen, 200 mg., twice a day. *Id.* Crawford, however, asserts that he was never seen by Walls about diabetes or any of these things. *Resp.* at ¶ 7. Crawford also maintains he did not receive the Ibuprofen. *Id.* at ¶ 8.

Crawford was seen by Walls on November 9, 2005. *Resp.* at ¶ 10. According to Walls, Crawford was asking for dentures. *Defts' Ex.* D at ¶ 3. Walls indicates he examined Crawford's mouth and determined he had chronic gum disease and few remaining teeth. *Id.* Walls did not see any abscess but did observe receding gums. *Id.* Walls suggested Crawford brush his teeth and improve his oral hygiene. *Id.*; *Resp.* at ¶ 14. Crawford laughed at Walls' suggestion. *Id.*

According to Walls, Crawford state that while he was at the CCDC he would receive dentures free of charge. *Defts' Ex.* D at ¶ 3. According to Crawford, he was trying to get some teeth pulled. *Resp.* at ¶ 11. Crawford agrees that Walls informed him that he had chronic gum

disease. *Id.* Crawford disagrees that he told Walls he would receive free dentures. *Id.* at ¶ 12. Instead, Crawford maintains he told Walls that the CCDC rule book provides that "no person would be denied medical/dental services." *Id.*

On November 22, 2005, Crawford was seen by Walls complaining of dental pain. *Resp.* at ¶ 15. Walls observed no abscess. *Id.* at ¶ 16. He noted there were no acute problems. *Id.*

According to Walls, Crawford stated that he was awaiting Arkansas Department of Correction (ADC) approval for dental care. *Defts' Ex.* D at ¶ 4. Walls states Crawford admitted that he wanted the State to pay for his ongoing dental care. *Id.*

Crawford asked for a refill of Ibuprofen. *Resp.* at ¶ 18. Walls authorized Ibuprofen, 200 mg., three times a day. *Id.* Crawford received the Ibuprofen. *Id.* at ¶ 19.

On December 6, 2005, Crawford were seen by Walls. *Resp.* at ¶ 20. Crawford complained of a penile discharge. *Id.* Crawford indicated he had not had any problem until recently and denied any sexual activity. *Id.* at ¶ 21. It was determined it was possibly urethritis and Crawford was instructed to follow up with the Health Department and to increase water intake. *Id.* It is not clear how Crawford was to follow-up with the Health Department.

According to Walls, Crawford did not make any complaints about his teeth during this visit. *Defts' Ex.* D at ¶ 5. Crawford, however, states he did complain about his teeth. *Resp.* at ¶ 22. He contends Walls simply did not put the complaints down on paper. *Id.*

On December 7, 2005, Crawford submitted a grievance stating that he was being denied dental services. *Resp.* at ¶ 23. He stated he was in pain. *Id.* In response, Crawford was told an appointment would be made with the dentist if the nurse said so. *Id.* at ¶ 24. Crawford was told it would be his responsibility to pay and the jail would provide transportation. *Id.*

On December 11, 2005, Crawford submitted a grievance in which he stated that he had gone to the doctor on December 6th and he said it was nothing a Q-tip couldn't fix. *Resp.* at ¶ 25. Then Crawford said he got word from Lt. Cupp that he would have to wait until he got to the ADC for anything to be done with his teeth. *Id.* Crawford stated that he was in pain and could not wait. *Id.*

On December 12, 2005, Crawford submitted another grievance in which he stated he had an infection and he was in pain from his teeth. *Resp.* at ¶ 26. He stated he was not supposed to have to sit there in pain just because he didn't have any money. *Id.* In response, Crawford was told he would be given an appointment with the doctor. *Id.* at ¶ 27.

On December 14th Crawford submitted a grievance asking how long it took to get a doctor's appointment. *Resp.* at ¶ 28. He indicated he thought they were only trying to buy time and avoid taking him to the doctor. *Id.*

Crawford was seen by Walls on December 14th. *Resp.* at ¶ 29. Crawford complained about a toothache and a rash or dry skin. *Id.* Walls noted a faint rash on Crawford's shoulders. *Id.* at ¶ 30. Crawford was prescribed Tylenol, 650 mg., two times a day, as needed, and Benadryl, 25 mg., two times a day, as needed. *Id.* He received the prescribed medication. *Id.* at ¶ 31.

On December 15, 2005, Crawford submitted a grievance stating he was still waiting to go to the doctor. *Resp.* at ¶ 32. He indicated he believed they were deliberately being slow about taking him to the doctor hoping that he would be taken to the ADC. *Id.*

In response, Crawford was told he had a doctor's appointment. *Resp.* at ¶ 33. However, he was told that he would not be told the date of his appointment. *Id.*

AO72A
(Rev. 8/82)

On December 16, 2005, Crawford submitted a grievance asking why he had not been taken to a doctor. *Resp.* at ¶ 34(A). He stated his problems were getting worse. *Id.* He indicated his pain inside was killing him. *Id.* Crawford was asked what pain he was having. *Id.* at ¶ 34(B). He indicated the penile problem. *Id.*

On December 20, 2005, Crawford was seen by Walls for a dental abscess on his right lower front. *Resp.* at ¶ 35. Upon examination, is was noted Crawford had advanced gum disease. *Id.* at ¶ 36. The ADC was notified of his dental needs. *Id.*

On December 22, 2005, Crawford was prescribed 14 Ciprofloxacin, 500 mg. *Resp.* at ¶ 37. Crawford received the prescribed medication. *Id.* at ¶ 38.

On December 23, 2005, Crawford submitted a grievance stating that he wanted his medication on time. *Resp.* at ¶ 39. On December 23, 2005, Crawford was taken to a dentist, Dr. Billy Criswell. *Id.* at ¶ 40. Crawford had x-rays taken and two teeth extracted. *Id.*

On December 29, 2005, Crawford was seen by Walls. *Resp.* at ¶ 41. Crawford was asking for a Tylenol refill after his tooth extraction. *Id.*

Upon examination, Walls noted Crawford's dental extraction had healed well. *Resp.* at ¶ 42. Crawford also asked for a soft food tray. *Id.* Crawford was prescribed Tylenol, 650 mg., two times a day, as needed, and a soft diet was ordered. *Id.* at ¶ 43.

On January 4, 2006, Crawford submitted a grievance. *Resp.* at ¶ 44. He indicated he went to the nurse to get additional medication for three teeth that were hurting him. *Id.* He stated that he was told he would be sent back to the dentist about the teeth and receive a soft tray until he went back. *Id.* Despite this, Crawford indicated it had been a week and he had not been taken to the dentist, his medication had been stopped, and his soft tray had been stopped. *Id.*

In response, Terry Rea wrote he believed this had been taken care of by Lt. Cupp. *Resp.* at ¶ 45. Crawford indicates Lt. Cupp did take care of Crawford's request. *Id.*

On January 4, 2006, Crawford submitted another grievance asking what had happened with his dentist appointment. *Resp.* at ¶ 46. Crawford also asked if he was being denied dental services again. *Id.*

In response, Lt. Cupp wrote that Crawford had been taken to the dentist and the tooth that needed it was pulled. *Defts' Ex.* C-2 at page 18. However, Crawford indicates he was only taken to the dentist one time. *Resp.* at ¶ 47. When he went to the dentist on December 23rd, Crawford indicates he said something about the other teeth but the dentist merely replied these are the teeth the jail wanted him to pull. *Id.*

On January 4, 2006, Crawford submitted another grievance asking why he had been taken off the soft food diet. *Resp.* at ¶ 48. Crawford indicates he had been placed on the soft food diet when he went back and saw Walls about needing additional teeth pulled. *Id.* Crawford states he was to remain on the soft food diet until he returned to the dentist to have three more teeth pulled. *Id.* However, when Crawford spoke to Lt. Cupp she indicated he did not have another dentist appointment and took him off the soft food diet. *Id.* In response to the written grievance regarding the soft food diet, Lt. Cupp wrote that Crawford had only been placed on the soft food diet for two days following his two teeth being pulled. *Resp.* at ¶ 49.

On January 5, 2006, Crawford was seen by Walls complaining of dental pain. *Resp.* at ¶ 50. Upon examination, Walls noted that Crawford's upper incisor was loose but there was no abscess. *Id.* at ¶ 51. He noted Crawford's gums were receding but there was good healing from the prior extractions. *Id.*

According to Walls, Crawford asked that the tooth be extracted and that he be given medication for the pain. *Defts' Ex.* D at ¶ 10. Crawford was prescribed Ibuprofen and a request sent to the ADC for permission to have the tooth extracted. *Id.* Crawford agrees that he went to see Walls about teeth that needed pulling. *Resp.* at ¶ 52. However, Crawford states he was told by Lt. Cupp that there was nothing in his file about getting teeth pulled. *Id.* Crawford received the Ibuprofen. *Resp.* at ¶ 53.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## DISCUSSION

As noted above, Crawford was incarcerated at the CCDC from October 6, 2005, until January 9, 2006. *Resp.* at ¶ 1 & ¶ 3. According to Crawford, he was convicted and sentenced on December 24, 2005. *Resp.* at ¶ 4. Although the denial of medical care claims brought by pretrial detainees are more properly analyzed under the Due Process Clause of the Fourteenth Amendment than the Eighth Amendment, *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004), the Eighth Circuit has held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate . . . medical care," *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Defendants maintain there is no evidence of deliberate indifference on their part. First, with respect to Lt. Vena Cupp and Terry Rea, the jail administrator, defendants argue there is no evidence they played any role in determining what type of medical treatment should be given to the plaintiff. Instead, they maintain Charles Walls, the jail nurse, directly addressed the

plaintiff's medical needs and requests. Defendants maintain Walls addressed all of plaintiff's medical requests in a prompt manner and gave plaintiff proper medical care each time.

In this case, Crawford made repeated requests for dental care beginning on November 9, 2005, and continuing until his transfer to the ADC on January 9, 2006. Crawford complained repeatedly of dental pain. *See e.g., Resp.* at ¶ 15, ¶ 23, ¶ 25, ¶ 29, ¶ 44, ¶ 50. *Chance v. Armstrong*, 143 F.3d 698, 702 (2nd Cir. 1998)("Dental conditions, like other medical conditions, may be of varying severity."); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995)(three-week delay in dental treatment aggravated problem); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)(inmate suffered from breaking teeth, bleeding and infected gums, pain and weight loss due to an inability to eat demonstrated a serious dental condition); *Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984)(severe pain due to infected tooth); *Manney v. Monroe*, 151 F. Supp. 2d 976, 990 (N.D. Ill. 2001)(inmate asserts he suffered from pain, headaches, inability to eat and suffered weight loss due to inability to eat). *Cf. Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)("[D]ental care is one of the most important medical needs of inmates.").

Crawford was not seen by a dentist until December 23, 2005. After he was seen by a dentist, he continued to complain about dental pain, the need for additional extractions, and the need for additional pain medication. *See e.g., Resp.* at ¶ ; *Defts' Ex.* D at ¶ 10. There is no indication he was given any type of treatment for his advanced or chronic gum disease. *Defts' Ex.* D *at* ¶ 3 & ¶ 7. While a mere disagreement over the timing and type of dental treatment is not actionable, *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(prison officials do not violate the Eighth Amendment when, in exercising professional judgment, they refuse to implement

inmate's requested course of treatment), there is nothing that establishes Nurse Walls or the other defendants ever considered referring Crawford for dental treatment for the periodontal disease. Crawford also states he was told by Lt. Cupp that he would have to wait until he got to the ADC to get anything done about his teeth. *Cf. Chance v. Armstrong*, 143 F.3d 698, 704 (2nd Cir. 1998)("Crucially, he has also alleged that Dr. Moore and Dr. Murphy recommended extraction not on the basis of their medical views, but because of monetary incentives. This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment."). Crawford indicated Cupp is the one who took him off the soft food diet.

With respect to Rea, Crawford maintains Rea's primary concern was saving money and not providing necessary medical and dental care to detainees. Crawford maintains this is the reason for the long delay in scheduling Crawford's first dental appointment and the reason his second dentist appointment was not made.

Similarly, with respect to his penile discharge, Crawford first complained of the condition on December 6th and then on December 16th said the pain from the condition was killing him. *Resp.* at ¶ 20 & ¶ 34(A). Although Crawford had been told he would be taken to a doctor, Crawford indicates he was not seen by the doctor and it was his belief that the defendants were being deliberately slow about taking him in the doctor in the hopes that he would be transferred to the ADC. *Resp.* at ¶ 32. Crawford was not prescribed an antibiotic until December 22nd. *Resp.* at ¶ 37. We therefore cannot say, when the evidence is viewed most favorably to

Crawford, that there are no genuine issues of material fact as to whether defendants were deliberately indifferent to Crawford's serious dental and medical needs.

## CONCLUSION

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 21) be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of March 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)